NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **Joseph Roznowski,** | : | |
| | : | Civil Action No.06-cv-0519 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **Michael A. Paticchio, et als,** | : | |
| | : | |
| Defendants. | : | **OPINION** |
| | : | |

**SHERIDAN, U.S.D.J.**

      This matter comes before the Court on a motion by the New Jersey Attorney General, on behalf of Defendant Douglas Wolfson, J.S.C. and Defendant Honorable Mathias Rodriguez, J.S.C., and a motion by the attorney defendants, Michael A. Paticchio, Steven Bernstein, Steven Davis, and the law firm of DiFrancesco, Bateman, Coley, Yospin, Kunzman, Coley & Lehrer, P.C., to dismiss the plaintiff's Complaint based on numerous grounds.  The attorney defendants have also petitioned this Court to enjoin the plaintiff from filing future lawsuits against the attorney defendants without leave of court.

I.

      In or around 1968, Plaintiff Joseph Roznowski, a builder, purchased property in Piscataway, New Jersey ("Piscataway property") through his corporation, Rovan, Inc.  According to the Complaint, the property was landlocked and access could only be obtained through another lot, Lot 9, which plaintiff claims the Township of Piscataway had given to the plaintiff.  Plaintiff engaged the services of Defendant Michael A. Paticchio ("Paticchio"), an attorney with the defendant law

firm of DiFrancesco, Bateman, Coley, Yospin, Kunzman, Coley & Lehrer, P.C. The plaintiff claims that Paticchio failed to file the proper paperwork to transfer title and thus Lot 9 was never conveyed to the plaintiff.

In or around 1972 or 1973, plaintiff entered into an agreement with Paticchio to perform maintenance on commercial property owned by Paticchio and, in return, upon the property's sale, Paticchio would pay any and all monies owed. However, plaintiff alleges that Paticchio sold the property but failed to pay his financial obligations. It is claimed that Paticchio offered to pay the taxes on plaintiff's Piscataway property in an effort to reduce his debt.

In 1987, plaintiff claims that he obtained an offer to purchase the Piscataway property for the sum of $270,000. However, the deal was never consummated due to Paticchio's alleged inability to "get along with [the buyer's] attorneys" and Paticchio's advice to pass on the deal and re-list the property.

Two years later, the plaintiff accepted an offer to sell the property to the Muslim Church of Middlesex County for $200,000. The agreement allegedly provided that the buyer would put down $100,000 and the remainder would be paid within one year. An additional contingency required plaintiff to acquire and transfer Lot 9. However, the Township demanded $55,000 for the lot, which, according to plaintiff, was originally given to him, but for Paticchio's failure to file the necessary paperwork. Plaintiff purchased the lot to complete the transaction for the sale of the Piscataway property.

In or around 1989, plaintiff's wife filed for divorce. A member of Paticchio's law firm, Defendant Stephen Bernstein ("Bernstein"), represented the plaintiff in the divorce proceedings before Defendant Judge Wolfson. It is claimed that at some point Paticchio attempted to persuade

plaintiff to convey half of the Piscataway property to Paticchio so as to prevent plaintiff's wife from obtaining entitlement to the proceeds of the sale. Plaintiff apparently refused under the belief that plaintiff's wife would not be entitled to the property because it was acquired prior to marriage. Defendant Bernstein, after representing plaintiff for approximately six months, advised plaintiff that he could no longer represent him because of a "conflict of interest." While the conflict was never expressly identified, plaintiff maintains that Defendant Bernstein stated that he could not be a part of the "illegal actions anticipated by Defendant Paticchio." Shortly thereafter, Paticchio, represented by Defendant Stephen Davis of the defendant law firm, allegedly filed a motion to intervene claiming entitlement to 50% of the proceeds from the Piscataway property sale.

Plaintiff asserts that Paticchio was a personal acquaintance of Judge Wolfson. Further, plaintiff maintains that Paticchio had stated that "Judge [] Wolfson will give him what he wants because his office, the defendant law firm, was responsible for putting Defendant Wolfson on the bench." Ultimately, Judge Wolfson allegedly ruled in favor of Paticchio and granted Paticchio half of the proceeds from the Piscataway property sale. In addition, plaintiff claims that Judge Wolfson ordered a second mortgage be placed on plaintiff's house to pay Paticchio.

Following this ruling, plaintiff claims to have been contacted by Judge Rodriguez and, without indication as to the substance of the hearing, ordered plaintiff to appear before the court the next morning. At this meeting, Judge Rodriguez allegedly advised plaintiff that the Muslim Church of Middlesex County wanted to pay off the balance of the $100,000 owed on the Piscataway property sale. The court, allegedly ordered plaintiff to give the buyer a $25,000 discount. It is claimed that Judge Rodriguez stated that "if Plaintiff tried to appeal his decision Plaintiff would lose as Defendant Rodriguez had already talked to the Appellate judge and the appeal would be denied."

On August 5, 2005, plaintiff filed two Complaints in the Superior Court of New Jersey, Law Division, Middlesex County, against the defendant judges under Docket Nos. MID-L-5697-05 and MID-L-5698-05. The factual circumstances regarding the defendant judges are identical to allegations set forth in the Complaint herein. Those complaints contained state law claims including counts based on negligence, fraud, theft by deception, violation of the Rules of Professional Conduct, and breach of the duty of good faith and fair dealing. The cases were transferred to Monmouth County, where, on November 4, 2005, the Honorable Robert A. Coogan, J.S.C., dismissed the Verified Complaints with prejudice for failure to state a claim.

On September 30, 2005, plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Middlesex Vicinage, against Defendants Paticchio, Davis, and Bernstein, as well as the defendant law firm under Docket No. MID-L-7048-05. Again, the factual circumstances are identical to allegations set forth in the Complaint herein. On November 18, 2005, the Honorable Nicholas J. Stroumtsos, Jr., J.S.C., not only dismissed the matter with prejudice, but ordered plaintiff to pay attorney's fees incurred "in responding to the filing of plaintiff's frivolous Complaint," and enjoined plaintiff from filing future actions against these defendants "arising out of the same facts and occurrences" without "permission from the Assignment Judge of this Court."

II.

Plaintiff has instituted several lawsuits against Defendant Judge Rodriguez[1], Defendant Judge

---

[1] *Roznowski v. State of New Jersey, et al.*, United States District Court for the District of New Jersey, Civil Action No. 99-2267 (AJL); *Roznowski v. Rodriguez*, Superior Court of New Jersey, Law Division, Middlesex County, Docket No.: MID-L-5698-05.

Wolfson[2], Defendant Paticchio, Defendant Bernstein, Defendant Davis, and the defendant law firm.[3]

The same facts and claims are being repackaged in this case. In fact, plaintiff readily acknowledges in his letter brief in opposition to the defendant judges' motion to dismiss that this action is the same as those previously filed. He states:

> the Superior Court complaint in Middlesex County against Judge Wolfson and Judge Rodriguez docket numbers L-5697-05 and L-5698-05 although arising from the same cause of action as the federal lawsuit [present litigation] only alleged state claims and did not allege federal claims . . ."

Likewise, in plaintiff's opposition to the defendant attorneys' motion to dismiss, he states:

> Plaintiff has not litigated these issues in Federal Court prior to the within action. The prior lawsuits were filed in Superior Court, and although they share some of the facts with the within Federal Court complaint, the conspiracy issues, violations of the United States Constitution, and RICO statute are new allegations. The Superior Court complaints only allege state claims and the within complaint alleged federal claims.

The point is that the previous lawsuits arose out of the same transactions or set of facts which is the basis for the present litigation.

III.

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that

---

[2]   *Roznowski v. State of New Jersey, et al.*, United States District Court for the District of New Jersey, Civil Action No. 99-2267 (AJL); *Roznowski v. Wolfson*, Superior Court of New Jersey, Law Division, Middlesex County, Docket No.: MID-L-5697-05.

[3]   *Roznowski v. Paticchio, et al.*, Superior Court of New Jersey, Law Division, Middlesex County, Docket No.: MID-L-7048-05;  *Roznowski v. Paticchio, et al.*, Superior Court of New Jersey, Law Division, Middlesex County, Docket No.: MID-L-6556-97;  *Roznowski v. Paticchio, et al.*, Superior Court of New Jersey, Law Division, Middlesex County, Docket No.: MID-L-3108-92.

can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See *In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, *Fed. Practice & Procedure*: Civil 2d § 1357 at 340).

      The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See *Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998); 5A Wright & Miller, *Fed. Practice & Procedure*: Civil 2d § 1357. "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Id.* (emphasis in original) (quoting *Shaw v Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Any further expansion beyond the pleading, however, may require conversion

of the motion into one for summary judgment. Fed. R. Civ. P. 12(b).[4]

IV.

Plaintiff does not deny, and in fact readily admits, that the factual allegations that give rise to the instant Complaint were pled in the state actions against the defendants. However, plaintiff maintains that "although arising from the same cause of action [], [the state action complaints] only alleged state claims and did not allege the Federal Claims such as the RICO Statute and violations of the United States Constitution, Amendments 4, 5, and 14, as the within lawsuit alleges."

The New Jersey state courts apply the entire controversy doctrine, a doctrine that has continually evolved from common law. Prior to its confirmation in the State Constitution (N.J. Const. Art. VI, §111, para. 4), it was recognized as a basic principle of common law. *Cogdell v. Hospital Ctr. at Orange*, 116 N.J. 7, 15 (1989); *Smith v. Red Top Taxicab Corp .*, 111 N.J.L. 439, 440-41 (E. & A.1933). In *Cogdell*, the Court recognized that the doctrine "encompasses a mandatory rule for the joinder of virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." *Cogdell*, 116 N.J. 7, 16. The doctrine is intended to be applied to prevent a party from voluntarily electing to hold back a related component of the controversy in the first proceeding by precluding it from being raised in a subsequent proceeding. *Wm. Blanchard Co. v. Beach Concrete Co., Inc.*, 150 N.J.Super. 277, 292-93 (App.Div.), certif. denied, 75 N.J . 528 (1977). It thereby prevents "the evil of...'piecemeal litigation of fragments of a single controversy.'"

---

[4] Defendants' rely, and the discussion to follow is based, on documents beyond the pleading which is neither integral to or explicitly relied upon in the Complaint. Therefore, pursuant to Orders dated October 13, 2006 and December 20, 2006, plaintiff was placed on notice that the Court would be converting the motions to dismiss to motions for summary judgment, allowing plaintiff to offer and/or submit further documentation in support of his opposition.

7

*Id.* at 293 (quoting *Falcone v. Middlesex County Med. Soc.*, 47 N.J. 92, 94 (1966)). "Failure to comply with the entire controversy doctrine may preclude a party from maintaining a subsequent action." *Oltremare v. ESR Custom Rugs, Inc.*, 330 N.J.Super. 310, 315 (App.Div.2000).

The sanction of preclusion in New Jersey, however, is applied only as a remedy of "last resort." *Olds v. Donnelly*, 150 N.J. 424, 446 (1997). "[C]ounsel should also inform the court of other potential claims that it may have against the same party. One of the goals of the entire controversy doctrine is the efficient judicial administration of multiple claims." *Vision Mortgage Corp. v. Patricia J. Chiapperini, Inc.*, 156 N.J. 580, 584-85 (1999). The entire controversy doctrine gives the trial court an opportunity to manage multiple claims. *Id.* at 585. The administrative objectives of the doctrine are to afford complete and final disposition of cases by avoiding piecemeal litigation, to foster efficiency by the reduction of delay and to avoid waste. *Cogdell*, 116 N.J. at 15. The entire controversy doctrine is predicated on equitable considerations, thus requiring judicial fairness in its application. *Id.* "[T]he polestar for the application of the [entire controversy] rule is judicial 'fairness.'" *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 173 N.J. 59, 74 (2002) (quoting *Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Ass'n*, 243 N.J.Super. 624, 630 (App.Div.1990).

Codified in Rule 4:30A of the New Jersey Rules of Civil Procedure, the entire controversy doctrine provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of omitted claims to the extent required by the entire controversy doctrine." R. 4:30A. It is the "commonality of facts," rather than legal issues, parties, or remedies, "that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine." *DiTrolio v. Antiles*, 142 N.J. 253, 272, 662 A.2d 494 (1995). Thus, "the central consideration is whether the claims ... arise from related facts or the same transaction

or series of transactions." *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 265 (3d Cir.2004) (quoting *DiTrolio*, 142 N.J. at 267, 662 A.2d 494). The entire controversy doctrine applies to "virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." *Id.* at 265, 662 A.2d 494 (citation omitted).

Federal courts in New Jersey have applied New Jersey's entire controversy doctrine to bar claims that were actually litigated or could have been litigated in previous state court actions. See *Bernardsville Quarry v. Borough of Bernardsville*, 929 F.2d 927, 930 (3d Cir.1991); *Heir v. Del. River Port Auth.*, 218 F.Supp.2d 627, 632 (D.N.J.2002); *Dowdell v. Univ. of Medicine and Dentistry of New Jersey*, 94 F.Supp.2d 527, 534 (D.N.J.2000); *Tilbury v. Aames Home Loan*, 2005 WL 3477558 (D.N.J. 2005)(Wolfson). The Third Circuit held, in *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir.1999), that "federal courts should apply the general rule that the preclusive effect of a judgment is determined by the preclusion law of the issuing court." *Id.* Moreover, under the Full Faith and Credit Clause of the United States Constitution, "the judicial proceedings of a state court shall have the same full faith and credit within every court in the United States as they have by law or usage in the courts of the issuing state." *Paramount*, 178 F.3d 132, 141 (3d Cir.1999). Thus, a federal court in New Jersey must apply New Jersey's preclusion law, including its entire controversy doctrine, when determining the preclusive effect of a previous judgment issued by a New Jersey state court. See *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997); *Total Packaging Corp. v. Tenneco Packaging Corp.*, 2004 WL 758240, at *4 (D.N.J. 2004)(Cooper); *Sutton v. Sutton*, 71 F.Supp .2d 383, 390 (D.N.J.1999).

Given this Court's required application of New Jersey's entire controversy doctrine and plaintiff's concession that the federal claims asserted arise from the same set of factual

9

circumstances, plaintiff's claims against the defendants are dismissed.

V.

Already in place at the state level, the attorney defendants seek to enjoin the plaintiff from filing future lawsuits against the attorney defendants without leave of court. The Third Circuit has long recognized that a pre-filing injunction is an extreme remedy which must be "narrowly tailored and sparingly used." *Gonzalez v. Feiner*, 131 Fed. Appx. 373, 378 (3d Cir. 2005) (citing *Abdul-Akbar v. Watson*, 901 F.2d 329, 332 (3d Cir. 1990) (quoting *In re Packer Ave. Associates*, 884 F.2d 745, 747 (3d Cir. 1989)). Sufficient notice and opportunity to be heard are essential prerequisites to the entry of a pre-filing injunction. *See In re Oliver*, 682 F.2d 443, 445-446 (3d Cir. 1982).

In a matter that warranted injunctive relief, in *Watson v. Englewood Police Dept.*, 1995 WL 16780, (D.N.J. 1995), District Judge Wolin found that "the cost in time and personnel to process *pro se* and *in forma pauperis* pleadings requires some portion of the court's limited resources and ties up these limited resources to the detriment of other litigants." *Watson v. Englewood Police Dept.*, 1995 WL 16780, *2 (quoting *Abdul-Akbar*, 901 F.2d at 332)). If such relief is necessary, in seeking leave of court, a plaintiff must certify: (1) that the claims he wishes to present are new claims never before raised and disposed of on the merits by any federal courts; (2) that he believes the facts alleged in his complaint to be true, and (3) he knows of no reason to believe his claims are foreclosed by controlling law. *Gonzalez*, 131 Fed. Appx. At 378 (quoting *Abdul-Akbar*, 901 F.2d at 333).

While the Court recognizes that plaintiff has filed several lawsuits stemming from the same set of factual occurrences, the Court is persuaded by plaintiff's opposition brief, although incorrect, that he had a good faith belief that he could properly assert new federal claims in this Court. However, denying defendants' request for injunctive relief is not an invitation to plaintiff to continue

10

filing lawsuits against these defendants arising out of these facts.  The plaintiff has not abused the federal court system in a manner that would warrant such an extreme remedy.  The motion for injunctive relief is denied.


January 4, 2007                                         s/ *Peter G. Sheridan*
                                                        PETER G. SHERIDAN, U.S.D.J.